**WINFIELD COLLECTION LIMITED,**
Plaintiff/Counter–Defendant,

v.

**GEMMY INDUSTRIES
CORPORATION, Defendant/Counter–
Claimant.**

No. CIV. 02–40249.

United States District Court,
E.D. Michigan,
Southern Division.

March 30, 2004.

John E. Nemazi, Brooks & Kushman (Southfield), Robert C. Brandenburg, Brooks & Kushman (Southfield), Robert C.J. Tuttle, Brooks & Kushman (Southfield), Southfield, MI, for Winfield Collection, Limited, Plaintiff.

Richard W. Hoffmann, Warn, Burgess, Joseph G. Burgess, Warn, Burgess, Auburn Hills, MI, for Gemmy Industries Corporation, Defendant.

### OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSES, (3) DENYING PLAINTIFF'S MOTION TO DISMISS COUNT II OF DEFENDANT'S COUNTERCLAIM, AND (4) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF DEFENDANT'S COUNTERCLAIM

GADOLA, District Judge.

This is a copyright infringement action. *See* 17 U.S.C. § 101 *et seq.* Before the Court is Defendant's motion for summary judgment. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court will grant Defendant's summary judgment motion. Additionally, as more fully described below, the Court's adjudication of Defendant's summary judgment motion will entitle Defendant to the declaratory relief it seeks in its counterclaim, *see* 28 U.S.C. § 2201(a), and will render several other pending matters moot.

## I. BACKGROUND

Plaintiff produces craft designs. Consumers purchase the designs for the purpose of engaging in a craft project. These craft designs include instructions and images that explain how to create and assemble an object. In 1996, Plaintiff began to produce a design that enables consumers

to craft a witch-like figure that appears to have just crashed into a tree, pole, or other structure while flying on a broom (hereinafter "crashing-witch design"). The design calls for consumers to use plywood for the figure's body/clothing, hat, socks, and boots; a mop for the hair; and a black plastic trash bag for the cape. The design further suggests how consumers should paint the plywood (e.g., lime and white stripes for the socks and "fire red" for the fingernails). On July 23, 1996, Plaintiff obtained Copyright Registration No. VA–781–855 for its crashing-witch design.

Defendant produces three-dimensional figures, not two-dimensional designs. Prior to 1996, Defendant began to produce a witch-like figure flying on a broom, which consumers could suspend in the air (hereinafter "flying-witch figure"). Defendant's flying-witch figure is the subject matter of Copyright Registration No. VA1–198–449. In addition, in 1998, Defendant began to produce two witch-like figures that appear to have just crashed into a tree or similar object while flying on a broom; one figure came with a tree trunk and the other could be attached to a consumer's existing tree, pole, or similar object. The Court will refer to these two figures collectively as Defendant's "crashing-witch figure." Defendant's crashing-witch figure is the subject matter of Copyright Registration No. VA1–003–018. Defendant's flying-witch figure and crashing-witch figure do not require consumers to craft or assemble the figures. Further, the figures are not made from plywood and household materials; rather, the figures are finished products with refined materials and detailed features such as molded-plastic hands, socks, and boots; silk-like hair; foam for the arms, legs, and body; and fabric for the hat, clothing, and cape.

Plaintiff's one-count complaint alleges that Defendant's crashing-witch figure infringes the copyright of Plaintiff's crashing-witch design. Defendant responded with a two-count counterclaim. In count one, Defendant requests a judicial declaration of non-infringement, i.e., a declaration that its crashing-witch figure does not infringe the copyright of Plaintiff's crashing-witch design. In count two, Defendant alternatively alleges that Plaintiff's crashing-witch design infringes the copyright of Defendant's flying-witch figure. With respect to Plaintiff's infringement claim, Defendant filed a motion for summary judgment, and Plaintiff filed a motion for summary judgment on Defendant's affirmative defenses. With respect to Defendant's infringement counterclaim, Plaintiff filed a motion to dismiss for failure to state a claim as well as a motion for summary judgment. As more fully discussed below, the Court's disposition of Defendant's summary judgment motion will render the three other pending motions in this case moot.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, if a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated: "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judg-

ment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

■ The Court first will address Plaintiff's infringement claim and Defendant's motion for summary judgment on that claim. "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir.2003). In this case, Plaintiff's ownership of the crashing-witch design is not disputed; thus, copying is the sole issue before the Court.

■ "Not all copying is actionable ...: it is a constitutional requirement that a plaintiff bringing an infringement claim must prove copying of constituent elements of the work that are original." *Id.*

(emphasis and internal quotations omitted). When, as in this case, "there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Id.* (internal quotations omitted).

■ "Access is essentially [viewing] or having a reasonable opportunity to [view] the plaintiff's work and thus having the opportunity to copy." *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir.1999) (internal quotations omitted). Plaintiff has failed to establish access. While Plaintiff explains how Defendant had a reasonable opportunity to view figures crafted from Plaintiff's design, Plaintiff neglects to establish how Defendant had a reasonable opportunity to view the design itself. *See* Pl. Resp. Br. at 7–9. As described in much greater detail below, Plaintiff's copyright is limited to its design and does not cover figures crafted from its design. Plaintiff's failure to establish access entitles Defendant to summary judgment on Plaintiff's infringement claim.

■ With respect to the substantially-similar inquiry, Defendant's entitlement to summary judgment is even stronger. To determine whether there is a substantial similarity between the two works at issue, the United States Court of Appeals for the Sixth Circuit has established a two-step test. *See Kohus*, 328 F.3d at 855.

"[T]he first step requires identifying which aspects of the artist's work, if any,

are protectible by copyright." *Id.* at 855 (internal quotations omitted). "The essence of the first step is to filter out the unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity." *Id.*

■ Under this first step, the Sixth Circuit has presented three points to guide the determination. One, "[i]t is axiomatic ... *that mere abstract ideas are not protectible, but the expression of an idea is.*" *Id.* (emphasis added).[1] Two, pursuant to the "merger doctrine," "[w]hen there is essentially only one way to express an idea, the idea and its expression are inseparable [i.e., they merge,] and copyright is no bar to copying that expression." *Id.* at 856 (internal quotations omitted). Three, "[i]t is also important to filter out *scènes à faire:* those elements that follow naturally from the work's theme, rather than from the author's creativity or elements that are dictated by external factors such as particular business practices." *Id.* (internal quotations and citations omitted).[2]

■ "Once the unprotectible elements have been filtered out, the second step is to determine whether the allegedly infringing work is substantially similar to the protectible elements of the original." *Id.* at 856; *see also id.* at 855. When, as here, the intended audience of the products is the lay public, the substantially-similar determination "should be based on the judgment of the ordinary reasonable person." *Id.* at 856–57.

---

1. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea."); *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; *protection is given only to the expression of the idea—not the idea itself.*" (emphasis added)).

2. *See also McCarthy's Desk Encyclopedia of Intellectual Property* 390 (2d ed.1995) (*scènes à faire:* "Stock incidents, characters, or settings that are standard in writing about a certain topic or in expressing a certain concept."); *Black's Law Dictionary* 1346 (7th ed.1999) (*scènes à faire:* "standard or general themes that are common to a wide variety of works and are therefore not copyrightable.").

■ Applying these principles to the case at bar clearly demonstrates that Defendant is entitled to summary judgment on Plaintiff's infringement claim. The Court will first proceed to determine the aspects of Plaintiff's work that are protectible by copyright. *See id.* at 855–56. Plaintiff owns a copyright for a design. This design explains how to craft a figure. As discussed above, one cannot copyright an idea. *See id.* at 855. Thus, the idea behind Plaintiff's design is not protectible. In other words, the idea of fashioning a witch-like figure that appears to have just crashed into a tree, pole, or other structure cannot be afforded copyright protection.[3] As a consequence, the design's copyright is limited. The copyright protects the design "against duplication of [the] design on a paper to be used as an instructional sheet for an unauthorized designer, but will not protect against the embodying of the design" in a similar-looking object. 1–2 *Nimmer on Copyright* § 2.08[H][3] (2003). Restated, the "copyright gives [Plaintiff] the exclusive right to make copies or reprints of the drawing only[;] it gives [Plaintiff] no monopoly of the article illustrated." *Jack Adelman, Inc. v. Sonners & Gordon,* 112 F.Supp. 187, 188 (S.D.N.Y.1934); *see also Beaudin v. Ben & Jerry's Homemade, Inc.,* 896 F.Supp. 356, 359 (D.Vt.1995),[4] *aff'd,* 95 F.3d 1, 2 (2d Cir.1996); *Russell v. Trimfit, Inc.,* 428 F.Supp. 91, 94–95 (E.D.Pa.1977),[5]

*aff'd without opinion,* 568 F.2d 770 (3d Cir.1978). Accordingly, in addition to the idea not being protectible, the three-dimensional article illustrated in the design (i.e., a figure crafted from Plaintiff's design) is not protectible as well. The only protectible elements of Plaintiff's design are the text and two-dimensional images in the design.

■ Alternatively, even if Plaintiff could seek copyright protection for the article/figure illustrated in the design, most, if not all, elements of the article/figure would not be protectible for two additional reasons. First, discounting trivial variations, there is essentially only one way to express the idea of a witch crashing into an object while flying on a broom; thus, under the merger doctrine, since the idea and its expression are inseparable, the copyright is no bar to copying the expression. *See Kohus,* 328 F.3d at 856.

■ Second, most, if not all, of the component elements are *scènes à faire. See id.* That is, the pointed hat, the flowing cape, the curled boots, the dominant black color of the clothing, as well as the broom, are all elements that follow from the witch theme. These elements are routinely expressed in a wide variety of traditional witch figures, images, and costumes that are commonly employed during the Halloween season as well as in witch characters such as the "Wicked Witch of the

---

**3.** The Court also notes that the originality of Plaintiff's idea is in doubt. In 1995, before Plaintiff began producing its design, a Kansas resident appeared in a photograph in the *Kansas City Star* assembling a witch-like figure that had just crashed into a tree while flying on a broom. *See* "Witch Way," *Kan. City Star* at C1 (Oct. 12, 1995); Def. Mot. Ex. J.

**4.** *Beaudin,* 896 F.Supp. at 359: "[C]opyright protection is only afforded the plaintiff's particular designs, and not the idea of manufacturing hats which look like a Holstein cow's

coat.... [T]he defendant's hats represent different manifestations of the same idea, an element of plaintiff's work which is noncopyrightable.... Therefore, defendant's hats do not infringe on the plaintiff's copyright."

**5.** *Russell,* 428 F.Supp. at 94: "It appears to be well-established that the copyright of a dress design does not confer a monopoly of the idea upon the copyright owner. The copyright of the design does not prevent the manufacture and sale of similar-looking dresses."

West" in the *Wizard of Oz* and the main character in the cartoon *Broom Hilda*. *See* Def. Mot. Exs. H–I. Moreover, these elements are also expressed in Defendant's flying-witch figure that predated the production of Plaintiff's crashing-witch design. *See* Def. Mot. Br. at 10–14. Therefore, these elements would also be unprotectible as *scènes à faire*. Thus, under these two alternative approaches, the ultimate conclusion remains the same: the only protectible elements of Plaintiff's design are the text and two-dimensional images in the design.

Having filtered out the unprotectible elements, the Court now turns to comparing the remaining, protectible elements of Plaintiff's crashing-witch design to Defendant's crashing-witch figure to determine if, under the ordinary-reasonable-person standard, the two are substantially similar. *See Kohus,* 328 F.3d at 856–57. It is self-evident that there is no similarity between the protectible elements of Plaintiff's design and Defendant's figure. Defendant's three-dimensional figure does not possess any text, two-dimensional image, or other attribute that remotely hints of being similar to the design at issue. It is apples and oranges: Defendant produces a figure and Plaintiff produces a design—a piece of paper—that helps third-parties craft a figure. Therefore, the Court will grant Defendant's motion for summary judgment on Plaintiff's infringement claim. As a result, the Court will deny Plaintiff's motion for summary judgment on Defendant's affirmative defenses as moot.

Alternatively, even if Plaintiff's copyright protected elements of a three-dimensional figure crafted from its design, these elements are not substantially similar to the corresponding elements in Defendant's figure. Figures crafted from Plaintiff's design are made of plywood: the figure's body/clothing, hat, socks, and boots are plywood. In addition, figures

from Plaintiff's design have a mop for the hair and a black plastic trash bag for the cape. In sharp contrast, Defendant's crashing-witch figure is not made from plywood and household materials such as mops and plastic bags; rather, the figure is made from refined materials and have detailed features: molded-plastic hands, socks, and boots; silk-like hair; foam for the arms, legs, and body; and fabric for the hat, clothing, and cape. These stark differences preclude a finding that Defendant's crashing-witch figure is substantially similar to a figure crafted from Plaintiff's crashing-witch design. *See* Def. Mot. Br. at 15–19. Thus, under this alternative approach the result remains unchanged: the Court will grant Defendant's motion for summary judgment on Plaintiff's infringement claim.

Turning to Defendant's declaratory counterclaim (count one of Defendant's first amended counterclaim), Defendant requests a judicial declaration of non-infringement, i.e., a declaration that its crashing-witch figure does not infringe the copyright of Plaintiff's crashing-witch design. The issues involved in Plaintiff's infringement claim and Defendant's declaratory counterclaim are identical. Thus, for the same reasons that Defendant is entitled to summary judgment on Plaintiff's infringement claim, Defendant is entitled to the declaratory relief it seeks. *See* 28 U.S.C. § 2201(a); *QQC, Inc. v. Hewlett–Packard Co.,* 258 F.Supp.2d 718, 724–26 (E.D.Mich.2003) (Gadola, J.).

Proceeding to Defendant's infringement counterclaim (count two of Defendant's first amended counterclaim), Defendant alleges that Plaintiff's crashing-witch design infringes the copyright of Defendant's flying-witch figure. The key paragraph of the infringement counterclaim is paragraph twenty-two, which states:

[Plaintiff] contends that substantial similarity exists between its [crashing-witch design] and [Defendant's crashing-witch figure]. The substantial similarity claim by [Plaintiff] is between elements of the witch. Most of these elements are contained in [Defendant's] prior [flying-witch figure]. *Thus, if substantial similarity exists, as claimed by [Plaintiff], then [Plaintiff's crashing-witch design] is substantially similar to [Defendant's] prior [flying-witch figure].*

First Amend. Countercl. at ¶ 22 (emphasis added). As discussed in detail above, however, the Court has concluded that there is no similarity between Plaintiff's crashing-witch design and Defendant's crashing-witch figure. Accordingly, since the contingency articulated in paragraph twenty-two of the counterclaim never materialized, Defendant's infringement counterclaim (count two) is moot. Consequently, Plaintiff's motion to dismiss count two and motion for summary judgement on count two are rendered moot.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 20] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment on Defendant's affirmative defenses [docket entry 19] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED AND DECLARED** that, with respect to count one of Defendant's first amended counterclaim, Defendant's crashing-witch figure (which is the subject matter of Copyright Registration No. VA1–003–018) **DOES NOT INFRINGE** the copyright of Plaintiff's crashing-witch design (which is the subject matter of Copyright Registration No. VA–781–855).

**IT IS FURTHER ORDERED** that Defendant's copyright infringement claim in count two of the first amended counterclaim is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to dismiss count two of Defendant's first amended counterclaim [docket entry 41] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment on count two of Defendant's first amended counterclaim [docket entry 40] is **DENIED AS MOOT**.

**SO ORDERED.**