**DIRECTV, INC., Plaintiff,**

v.

**Bryan THOMAS, Defendant.**

**Directv, Inc., Plaintiff,**

v.

**Thomas Suggs, Defendant.**

**Civil Nos. 03–40235, 03–40236.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 9, 2004.

Bradley H. Darling, Honigman, Miller, Detroit, MI, Norman C. Ankers, Honigman, Miller, Detroit, MI, for Directv, Incorporated, Plaintiff.

John T. Hermann, Berkley, MI, for Thomas Suggs, Defendant.

## OPINION AND ORDER DENYING DEFENDANTS' SUMMARY JUDGMENT MOTIONS

GADOLA, District Judge.

Before the Court are two nearly-identical summary judgment motions in two different, but very similar civil actions. These actions concern claims of satellite communications piracy, including alleged violations of the Wiretap Act. Directv, Inc., is the plaintiff in each action. Bryan Thomas is the defendant in case number 03–40235, and Thomas Suggs is the defendant in case number 03–40236. Each defendant has filed a summary judgment motion, and each motion raises a statute-of-limitations and a laches challenge. The Court held a hearing on each motion on July 21, 2004. For the reasons set forth below, the Court will deny each motion.

## I. BACKGROUND

Directv provides television programming through its nationwide broadcast satellite system. Directv encrypts, i.e., electronically scrambles, its satellite communications to provide security for and prevent unauthorized viewing of its programming. Directv offers its programming to residential and commercial customers on a subscription and pay-per-view basis. Each customer is required to create an account with Directv and to acquire certain items, including a satellite dish and an access card, to receive and view Directv's satellite communications. Upon activation of the access card, the customer can receive and view a decrypted format of the television channels for which the customer has subscribed or otherwise purchased from Directv.

Despite measures taken by Directv to prevent unauthorized reception and viewing of its programming, individuals, commonly referred to as pirates, circumvent Directv's security measures to gain unlimited and free access to all of Directv's programming. Thomas and Suggs, the defendants in these two actions, are alleged to be two such pirates.

Additionally, a number of individuals and firms have engaged in the manufacture and sale of illegal devices that assist such pirates in circumventing Directv's security technology. Directv has therefore initiated litigation and worked with state and federal law enforcement agencies to quell the manufacture and distribution of this illegal piracy equipment.

To that end, Directv initiated a lawsuit on April 2, 2001, against an illicit manufac-

turer and distributor known as White Viper Technologies. Within that suit, on May 25, 2001, Directv executed writs of seizure, with the assistance of local law enforcement officers, at a shipping facility used by White Viper. At that time, Directv obtained a substantial body of sales records, shipping records, email communications, credit card receipts, and other business and financial records identifying numerous pirates of its programming. Those records, however, did not include any mention of Thomas or Suggs.

On September 14, 2001, several months after the May 25 raid, Derek Trone, the operator of White Viper, voluntarily surrendered additional business records to Directv. Those additional records documented purchases of illegal pirate access devices by Thomas and Suggs.

The devices in question enabled the interception of satellite communications broadcast by Directv. The records indicated that on or about March 24, 2000, and on or about July 2, 2000, Thomas purchased pirate access devices and that the devices were shipped to Thomas at his address in Shelby Township, Michigan. The records further indicated that on or about January 21, 2001, Suggs purchased pirate access devices and that the devices were shipped to Suggs at his address in Taylor, Michigan.

On September 11, 2003, Directv filed suit against Thomas and Suggs. Initially, there was one suit against both Thomas and Suggs, which was assigned case number 03–40225. Pursuant to Administrative Order 03–AO–021, the suits were severed. The suit against Thomas was reassigned case number 03–40235, and the suit against Suggs was reassigned case number 03–40236.

The complaints against Thomas and Suggs are nearly identical. Each complaint contained three counts: count one,

unauthorized reception of satellite signals, see 47 U.S.C. § 605(a); count two, unauthorized interception of electronic communications, see 18 U.S.C. § 2511(1)(a); and count three, possession of pirate access devices, see 18 U.S.C. § 2512(1)(b). In addition to damages, Directv also seeks permanent injunctive relief against Thomas and Suggs from continuing the alleged piracy. See 47 U.S.C. § 605(e)(3)(B)(i); 18 U.S.C. § 2520(b)(1).

The first count in each complaint is no longer pending. In Thomas's case, Thomas moved for summary judgment on count one on April 16, 2004. Directv did not file a response opposing that summary judgment motion. Accordingly, on May 18, 2004, the Court granted that summary judgment motion as unopposed and entered a partial judgment with respect to count one in favor of Thomas. Likewise in Suggs's case, Suggs moved for summary judgment on count one on April 20, 2004. Again, Directv did not file a response opposing that summary judgment motion. Thus, on June 10, 2004, the Court granted that summary judgment motion as unopposed and entered a partial judgment with respect to count one in favor of Suggs.

With respect to the remaining counts, Thomas and Suggs filed motions for summary judgment on counts two and three in their respective cases on April 19, 2004. Directv filed a response opposing each motion on May 13, 2004. Thomas and Suggs did not file reply briefs.

Furthermore, at the summary judgment hearing on July 21, 2004, the parties stipulated, on the record, to the dismissal of count three in each action. See DIRECTV, Inc. v. Treworgy, 373 F.3d 1124, 1126–29 (11th Cir.2004). Accordingly, the only count pending in each action is count two.

## II. ANALYSIS

In their respective motions, Thomas and Suggs contend that they are entitled to summary judgment on count two on statute-of-limitations as well as on laches grounds.

### A. Statute of Limitations

The Wiretap Act, specifically 18 U.S.C. § 2520(a), provides a civil cause of action for any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of, *inter alia,* 18 U.S.C. § 2511(1)(a). *See Lanier v. Bryant,* 332 F.3d 999, 1003 (6th Cir.2003). Count two of each complaint is brought under § 2511(1)(a). Such § 2511(1)(a) claims are governed by a two-year statute of limitations in 18 U.S.C. § 2520(e). *See Lanier,* at 1003. Section 2520(e) provides that "a civil action under this section may not be commenced later than two years after the date upon which the claimant first has a *reasonable opportunity to discover the violation.*" 18 U.S.C. § 2520(e) (emphasis added).

Directv contends that its first reasonable opportunity to discover the illegal actions of Thomas and Suggs was when Trone of White Viper voluntarily surrendered the pertinent business records on September 14, 2001. *See* Whalen Affs. at ¶ 5. Consequently, Directv maintains that it complied with the statute of limitations because the actions against Thomas and Suggs were initiated on September 11, 2003, i.e., before the two-year period lapsed on September 14, 2003.

Thomas and Suggs, on the other hand, contend that the limitations period began to run before September 14, 2001.

In Thomas's case, Thomas maintains that the following dates should be considered the accrual date, i.e., the date upon which Directv had a reasonable opportunity to discover Thomas's alleged violation of § 2511(1)(a): (1) the dates on which Thomas purchased the pirate access devices, March 24, 2000, and July 2, 2000; (2) the date on which Directv filed suit against White Viper, April 2, 2001; or (3) the date on which Directv raided the facility used by White Viper, May 25, 2001.

Similarly, in Suggs case, Suggs contends that the following dates should be considered the accrual date: (1) the date on which Suggs purchased the pirate access devices, January 21, 2001; (2) the date on which Directv filed suit against White Viper, April 2, 2001; or (3) the date on which Directv raided the facility used by White Viper, May 25, 2001.

■ Here, however, unlike the traditional wiretapping cases relied upon by Thomas and Suggs in support of their proffered accrual dates, Directv did not have a reasonable opportunity to discover the specific violations that now constitute the subject matter of these lawsuits. *See Lanier,* 332 F.3d at 1003–04; *Sparshott v. Feld Entm't, Inc.,* 311 F.3d 425, 429–30 (D.C.Cir.2002); *Reynolds v. Spears,* 93 F.3d 428, 432 (8th Cir.1996); *Andes v. Knox,* 905 F.2d 188, 188–89 (8th Cir.1990), *Newcomb v. Ingle,* 827 F.2d 675, 679 (10th Cir.1987). While it is true that, for 2520(e) purposes, a wiretap plaintiff need not know the identity of the specific violator who caused the plaintiff's wiretap injury, *see Sparshott,* 311 F.3d at 430 (citing *Andes,* 905 F.2d at 189), it is also true that § 2520(e)'s two-year limitations period does not begin to run until the plaintiff has a reasonable opportunity to discover "*the violation*" that is the subject matter of the lawsuit. 18 U.S.C. § 2520(e) (emphasis added); *see also Sparshott,* 311 F.3d at 430 (citing *Dyniewicz v. United States,* 742 F.2d 484, 486–87 (9th Cir.1984)). Directv concedes that it possessed some generalized knowledge that satellite piracy was

broadly occurring as early as 1995, but Directv's general awareness that widespread satellite piracy was ongoing is not enough to give rise to a cause of action for a specific, individual violation of the Wiretap Act and thereby initiate the limitations period. To conclude otherwise would produce an absurd result: if general awareness of the existence of widespread pirating activity were sufficient to trigger the running of the limitations period, then all cases arising after 1997 (two years after Directv gained this general awareness) would be time barred.

Moreover, the dates on which Thomas and Suggs purchased their respective pirate access devices do not trigger the running of the limitations period because there is no indication that Directv was aware of or had a reasonable opportunity to become aware of the purchases on those dates. On the contrary, Directv's evidence shows that it was not aware of those purchases until September 14, 2001, when Trone turned over White Viper's records implicating Thomas and Suggs. *See* Whalen Affs. at ¶ 5. Further, the mere purchase of an illegal device by someone somewhere from a vendor known for dealing in such illegal devices does not present a wiretap plaintiff, such as Directv, with a reasonable opportunity to discover the ensuing violation of the Wiretap Act with that particular illegal device, nor does it present notice that such a plaintiff should launch an investigation to uncover the facts surrounding the forthcoming violation with that particular illegal device, *see Sparshott*, 311 F.3d at 429, because there is no way for such a plaintiff, unless it is omnipresent or is itself wrongfully intercepting communications (e.g., spying on the illicit vendor's electronic sales) to know of the purchase on the date that it occurred. Thus, the purchase dates did not initiate the running of the limitations period in these cases because they are not the dates on which

Directv first had a reasonable opportunity to discover the respective violations of the Wiretap Act that are the subject matter of these two lawsuits. *See* 18 U.S.C. § 2520(e).

Further, the dates on which Directv sued White Viper and raided the facility used by White Viper also did not trigger the start of the limitations period. At the commencement of the White Viper suit and at the time of the White Viper raid, Directv was still in the dark as to the specific violations of the Wiretap Act that are the subject matter of these two lawsuits. Had the records obtained in the raid contained information relating to the specific violations of the Wiretap Act perpetrated by Thomas and/or Suggs, the result here would be different. However, the records seized on May 25, 2001, did not provide Directv with any indication that the specific violations at issue had occurred. Therefore, the date of the White Viper suit and the date of the White Viper raid did not initiate the running of the limitations period in these cases because they are not the dates on which Directv first had a reasonable opportunity to discover the respective violations of the Wiretap Act that are the subject matter of these two lawsuits. *See* 18 U.S.C. § 2520(e).

Thus, viewing the facts and drawing all reasonable conclusions therefrom in a light most favorable to Directv, the nonmoving party, *see Winfield Collection Ltd. v. Gemmy Indus. Corp.*, 311 F.Supp.2d 611, 614 (E.D.Mich.2004) (Gadola, J.), *see also Lanier*, at 1003 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548), the Court concludes that Directv did not have reasonable opportunity to discover the respective violations that are the subject matter of these two lawsuits until Trone disclosed White Viper's records on September 14, 2001, detailing the purchases of unlawful pirate

access devices by Thomas and Suggs. Consequently, Thomas and Suggs are not entitled to judgment as a matter of law on their respective statute-of-limitations arguments. *See* Fed. Rule Civ. P. 56(c).

### B. Laches

Thomas and Suggs further argue that Directv's demands for injunctive relief should be precluded by the equitable doctrine of laches. "Laches is the negligent and unintentional failure to protect one's rights." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.,* 365 F.3d 435, 466 (6th Cir.2004) (internal quotations omitted). "Laches consists of two elements: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party." *Id.* (internal quotations omitted). "With respect to the first element, there is a strong presumption that a plaintiff's delay in bringing suit is reasonable as long as the analogous statute of limitations has not lapsed." *Id.* (internal quotations omitted). Moreover, "[o]nly rarely should laches bar a case before the analogous statute has run." *Id.* (internal quotations omitted).

■ As discussed above, Directv brought civil actions against Thomas and Suggs within the analogous two-year statute of limitations. Accordingly, Directv's delay, if any, is presumed reasonable. *See id.* Moreover, given Directv's actions in these matters, the Court concludes that these two cases should not be among those "rare" cases in which laches bars the case before the analogous statute has run. *Id.* As noted by Thomas and Suggs in their respective briefs, Directv has been actively attempting to ferret out and prevent piracy of its satellite communications since 1995. As acknowledged by Thomas and Suggs, since 1995, Directv has actively investigated satellite piracy, filed lawsuits, raided companies selling pirate access de-vices, and seized records in an attempt to uncover piracy. In the course of such actions, Directv secured and then executed a writ of seizure against White Viper on May 25, 2001, but even that effort failed to detect the alleged piracy by Thomas and Suggs. Directv's additional investigation, pursuit, and prosecution of the matter against White Viper eventually resulted in the disclosure of information concerning the alleged piracy by Thomas and Suggs. Given this dynamic, industrious, and resourceful pursuit, it cannot be said that Directv sat in its rights regarding the investigation and discovery of the Wiretap violations alleged in these two lawsuits.

Consequently, Thomas and Suggs have failed to show any unreasonable delay on the part of Directv, which is the first element of the laches inquiry, and, as a result, there is no "resulting prejudice," which is the second element of the laches inquiry. *Id.* Thus, viewing the facts and drawing all reasonable conclusions therefrom in a light most favorable to Directv, *see Winfield Collection,* 311 F.Supp.2d at 614, the Court concludes that Thomas and Suggs are not entitled to judgment as a matter of law on their respective laches arguments. *See* Fed. Rule Civ. P. 56(c). Consequently, the Court will deny each summary judgment motion.

### III. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that, pursuant to the parties' stipulation on the record on July 21, 2004, count three of the complaint in case number 03–40235 and count three of the complaint in case number case number 03–40236 are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, in case number 03–40235, Bryan Thomas's summary judgment motion [docket entry 17] is **DENIED** and that, in case number

03–40236, Thomas Suggs's summary judgment motion [docket entry 17] is **DENIED**.

**IT IS FURTHER ORDERED** that, in order for the parties to have adequate time to digest this opinion and order and to prepare for trial, the proposed joint final pretrial order date, the pretrial conference date, and the trial date in each case shall be at least thirty days after the date of this opinion and order. A detailed scheduling order resetting these dates will be issued by the Court in the near future.

**SO ORDERED.**