Susan J. LORIMER, individually and as Executor of the ESTATE OF Mary Katherine LORIMER, Plaintiff,

v.

Carlos BERRELEZ, Doranne Wunderlich–Berrelez, and Comerica Bank, Defendants.

No. CIV. 02–40345.

United States District Court, E.D. Michigan, Southern Division.

Aug. 18, 2004.

Susan J. Lorimer, San Ramon, CA, pro se.

N. Scott Stensaas, Flint, MI, for Plaintiff.

John A. Gyorgy, William J. DeBiasi, P.C., Taylor, MI, for Defendants.

### OPINION AND ORDER

GADOLA, District Judge.

Before the Court is a dispositive motion filed by Carlos Berrelez and Doranne Wunderlich–Berrelez in this diversity action. *See* 28 U.S.C. § 1332. The motion attacks the complaint on three grounds: (1) subject matter jurisdiction, (2) statute of frauds, and (3) statute of limitations. The Court held hearing on the motion on July 15, 2004. For the reasons set forth below, the Court will grant the motion in part and deny the motion in part.

### I. BACKGROUND

This action concerns a family dispute over a parcel of property located at 16800 Strong Drive, Taylor, Michigan (hereinafter "the property"). Prior to April 17, 1989, Mary Katherine Lorimer owned the property. Mary Katherine Lorimer is the mother of Susan Lorimer, plaintiff. In 1989, Carlos Berrelez and Doranne Wunderlich–Berrelez, defendants, then husband and wife, expressed an interest in the property. Susan Lorimer is married to Doranne Wunderlich–Berrelez's father, Jack Wunderlich. On April 17, 1989, Mary Katherine Lorimer executed a quitclaim deed transferring the property to Carlos Berrelez and Doranne Wunderlich–Berrelez.

According to the complaint, this deed was part of an oral contract: Mary Katherine Lorimer agreed to convey the property in exchange for the execution of a note from Carlos Berrelez and Doranne Wunderlich–Berrelez for $50,000.00 plus interest with monthly payments. However, according to Susan Lorimer's declaration, which was submitted with her response to the pending motion, the purported oral contract called for a note totaling $55,000.00 at ten percent interest with monthly payments. Further, according to the complaint, the purported oral contract was entered into in May 1989, after Mary Katherine Lorimer executed the quitclaim deed. Nevertheless, according to Susan Lorimer's subsequent declaration, the purported oral contract was entered into before the quitclaim deed was executed in April 1989. Susan Lorimer maintains that she negotiated this purported oral contract on behalf of her mother.

In their respective affidavits attached to their motion, Carlos Berrelez and Doranne Wunderlich–Berrelez state that, while some discussions were held at the time of the conveyance, "at no time was any discussion held or agreement entered into where myself or my former [spouse] agreed to repayment of $50,000.00 to Mary Katherine Lorimer for the purchase price of the house. We had agreed to take over all responsibility on bringing the delinquent real property taxes current. This was our sole agreement as to consideration for granting of the title of the property to us." Berrelez Aff. at ¶¶ 4–6; Wunderlich–

Berrelez Aff. at ¶¶ 4–6. In their motion, Carlos Berrelez and Doranne Wunderlich–Berrelez further state that, with respect to the oral discussions about the transfer of the property, "nothing was ever reduced to writing" save for the quitclaim deed. Def. Mot. at 5. This deed, as is typically the case, states the consideration for the conveyance was one dollar; the deed does not mention any other consideration nor any additional oral or written agreements with respect to the conveyance.

In support of her theory of events, Susan Lorimer heavily relies on a document entitled "Installment Note—Interest Included." Lorimer Decl. Ex. A. According to her declaration, she prepared this note in April 1989 to reflect the purported oral contract. This note, however, is dated August 1992. Further, according to a letter from Susan Lorimer to Carlos Berrelez and Doranne Wunderlich–Berrelez dated July 28, 1992, Susan Lorimer sent this note to Carlos Berrelez and Doranne Wunderlich–Berrelez for their signatures on July 28, 1992.

Nonetheless, this note is unsigned: the lines calling for the signatures of Carlos Berrelez and Doranne Wunderlich–Berrelez are blank. According to her response to the pending motion, Susan Lorimer believes that this note is signed and that Carlos Berrelez and Doranne Wunderlich–Berrelez have neglected to return a signed copy to Susan Lorimer; however, she has no proof to support this belief. The principal amount of this unsigned note is $50,000.00 not $55,000.00. Further, the casual and informal circumstances surrounding the unsigned note is exhibited in one line of Susan Lorimer's letter of July 28, 1992, in which she told Carlos Berrelez and Doranne Wunderlich–Berrelez: "If you don't like the note, you can do one yourselves [and] send [it] to us; we don't care." Lorimer Decl. Ex. D.

This unsigned note calls for a ten percent rate of interest. It also calls for monthly principal-and-interest payments of $416.67 beginning on June 1, 1989. Despite the plain text of the unsigned note, Susan Lorimer maintains in her declaration that this $416.67 amount is an interest-only payment. Her aforementioned letter of July 28, 1992, recites this same understanding that it is an interest-only payment.

This unsigned note also states that should Carlos Berrelez and Doranne Wunderlich–Berrelez "fail to pay for [nine] consecutive months, the [beneficiaries] of this note have the right to repossess the subject property." Lorimer Decl. Ex. A. According to Susan Lorimer's declaration, this repossession language was part of the purported oral contract.

Further, the unsigned note includes an award-of-attorneys-fees clause for any such fees incurred in litigation under the note. The unsigned note also includes an acceleration clause which states: "Should default be made in payment of any installment when due, the whole sum of principal and accrued interest shall become immediately due, without notice, at the option of the holder of this note." Id. The Court has not been provided with any evidence indicating that these clauses were part of the purported oral contract.

In addition to the unsigned note, Susan Lorimer relies upon a document that is purported to be a schedule of payments made by Carlos Berrelez and Doranne Wunderlich–Berrelez. This document does not identify the names of the parties, nor does it identify the property. The document is a form prepared by the Lawyers Title Insurance Company. Susan Lorimer has provided three copies of this form to the Court: the copy with the most payment entries is difficult to read and the

copy with the fewest payment entries is the easiest to read.

At the top of the form, the following printed words appear: "Received Payment on the within Contract as follows." Lorimer Decl. Ex. B. Below those words appear payment entries starting in May 1989 and ending in November 1995. None of the amounts total $416.67, as called for in the unsigned note; rather, most of the amounts range from $400.00 to $600.00.

The opening balance on this schedule is $52,502.79. According to Susan Lorimer's declaration, this amount represented the principal amount of $55,000.00 less a $2,497.21 credit for delinquent taxes. Additionally, at the top left corner of this schedule appears the following markings: "10% interest[;] 15 days late $10.00[;] 55,-000—2497.21 taxes[;] 4–19–89[;] downpmt[.]" *Id.* Susan Lorimer argues that these markings, along with the recorded payments, demonstrate the existence of a contract.

In support of her claims, Susan Lorimer also relies on a number of checks and wire transfers in 1994 and 1995 from Carlos Berrelez and Doranne Wunderlich–Berrelez to Susan Lorimer and Jack Wunderlich. According to Susan Lorimer's declaration, these checks and wire transfers, most of which ranged from $400.00 to $600.00, were note payments.

The last purported payment occurred in November 1995. At about this time, Carlos Berrelez and Doranne Wunderlich–Berrelez divorced. Doranne Wunderlich–Berrelez resides on the property to this day. Mary Katherine Lorimer died on June 12, 2001, and Susan Lorimer is the representative of the estate. On November 7, 2001, Susan Lorimer summarized her version of the state of affairs at that juncture in a letter to Doranne Wunderlich–Berrelez. This letter states in pertinent part:

Doranne, your father as you know is soon to be seventy-three years old and he and I are desperately trying to re-arrange our business and social lives, and are presently attempting to retire or at least semi-retire in the very near future.

As I'm sure you are aware, we can't sell the property we currently own due to the current terrorist threat and people's negativism toward purchasing anything. The condo in Hawaii is now rented, but up for sale with no buyers on the horizon. Our stock holdings have taken a terrible hit, and quite frankly, we're hurting!

Doranne, in view of our currently negative financial circumstances, it would be appreciated if you could start to make timely mortgage payments plus interest on the Strong Drive property, perhaps in the amount of $400.00 to $500.00 a month.

Your last payment on the contract was six years ago in November of 1995. Your not paying on the house was all right with us during your divorce transition, and when we didn't particularly need the money, but now with our current upside down financial circumstances we really need the income to fiscally survive at this time of our lives. Doranne, in closing, please let me hear from you as soon as possible regarding your resumption of payments on the property, as we are, as explained, trying to get our budget, finances, and estate together in the very near future.

Lorimer Decl. Ex. D.

On February 11, 2002, Susan Lorimer filed suit against Carlos Berrelez, Doranne Wunderlich–Berrelez, and Comerica Bank. On July 8, 2002, this Court dismissed the suit without prejudice on failure-to-prosecute grounds. *See Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–33, 82 S.Ct. 1386, 8

L.Ed.2d 734 (1962); E.D. Mich. LR 41.2. On November 21, 2002, Susan Lorimer filed the complaint in the present suit against the same three defendants. The complaint of February 11, 2002, and the complaint of November 21, 2002, raise the same claims and are virtually identical. The second complaint was initially assigned to the Honorable Gerald E. Rosen, United States District Judge, but then reassigned as a companion case to this Court. *See* E.D. Mich. LR 83.11(b)(7).

In this action, Susan Lorimer appears as plaintiff individually by virtue of being a beneficiary of her mother's estate, and she appears as the legal representative of the estate. Until the motion hearing on July 15, 2004, Susan Lorimer was prosecuting this matter *pro se*. Her complaint contains seven counts: (1) breach of verbal contract, (2) breach of written contract, (3) common counts (i.e., a claim on the alleged indebtedness), (4) fraudulent misrepresentation, (5) constructive trust, (6) equitable lien, and (7) rescission. In addition to Carlos Berrelez and Doranne Wunderlich–Berrelez, Comerica Bank is a defendant because, according to count six, it appears that Comerica has some type of interest in the property. Count six is the only count that concerns Comerica. Comerica has been served with the complaint but has not answered the complaint.

In the complaint, Susan Lorimer invokes the aforementioned acceleration clause in the unsigned note making the principal and accrued interest immediately due. The complaint alleges that total amount of indebtedness as of November 1995 was $51,209.74. In addition to seeking the recovery of this amount, the complaint also requests prejudgment interest, costs, and attorney fees. Additionally, count four seeks an unspecified amount of actual damages plus $200,000.00 in punitive damages for fraudulent misrepresentation.

As mentioned above, in addition to the breach-of-contract, indebtedness, and tort claims, the complaint requests the following equitable remedies to cure the alleged unjust enrichment in this case. Count five requests the imposition of a constructive trust: i.e., an order declaring Carlos Berrelez and Doranne Wunderlich–Berrelez to be trustees of the property with the sole duty of conveying the property to Susan Lorimer. Count six requests the imposition of an equitable lien on the property, the foreclosure of that lien, and the sale of the property with the proceeds going to satisfy Susan Lorimer's claims. Count seven requests rescission of the transfer of the property to Carlos Berrelez and Doranne Wunderlich–Berrelez (i.e., rescission of the quitclaim deed). Although not explicitly stated in the complaint, it appears that counts five, six, and seven are alternative remedies, i.e., Susan Lorimer seeks whichever of these three remedies is most advantageous to her interests.

Before the Court is a motion for "summary disposition" filed by Carlos Berrelez and Doranne Wunderlich–Berrelez. Susan Lorimer filed a response to the motion as well as aforementioned declaration in support of her response. Carlos Berrelez and Doranne Wunderlich–Berrelez did not file a reply brief. Comerica has not participated in these proceedings in any manner.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

In their motion, Carlos Berrelez and Doranne Wunderlich–Berrelez first argue that the Court lacks jurisdiction to hear this action. Subject matter jurisdiction for this action is premised on diversity jurisdiction under 28 U.S.C. § 1332. Section 1332(a) requires that the amount in controversy exceed the sum of $75,000.00, exclusive of interest and costs. Carlos Berrelez and Doranne Wunderlich–Berrelez argue

that Susan Lorimer's claims fail to satisfy this jurisdictional amount.[1]

■ Contrary to Carlos Berrelez and Doranne Wunderlich–Berrelez's contention, however, the jurisdictional amount is satisfied in this action because, in addition to seeking damages, Plaintiff is seeking injunctive relief under her constructive trust and rescission claims. The amount in controversy in such injunctive relief claims is measured by "the value of the object that is the subject matter of the action." Charles A. Wright, Arthur R. Miller & Edward R. Cooper, 14B *Federal Practice & Procedure: Jurisdiction 3d* § 3708 (1998); *see also* Brittain Shaw McInnis, "The $75,000.01 Question: What is the Value of Injunctive Relief?" 6 *Geo. Mason L.Rev.* 1013, 1022, 1035–39 (1998).

■ Here, the object at issue is the property located at 16800 Strong Drive, Taylor, Michigan, and its value is at least $185,000.00. *See* Lorimer Decl. at ¶ 8 (residence, excluding five acres of land, appraised at $185,000.00 shortly before the complaint was filed in November 2002). Consequently, the jurisdictional amount is satisfied, and the Court has subject matter jurisdiction over this civil action. *See* 28 U.S.C. § 1332; Fed.R.Civ.P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)); *Chaness & Simon, P.C. v. Simon*, 241 F.Supp.2d 774, 777 (E.D.Mich. 2003) (Gadola, J.).[2]

## B. Statute of Frauds

■ Carlos Berrelez and Doranne Wunderlich–Berrelez further attack the complaint on statute-of-fraud grounds. *See* Mich. Comp. Laws § 566.106; Mich. Comp. Laws § 566.108. The purpose of the statute of frauds is (1) to prevent fraud between parties of certain contracts and (2) "to prevent disputes over what provisions were included in an oral contract." *Jim–Bob, Inc. v. Mehling*, 178 Mich.App. 71, 82, 443 N.W.2d 451, 456 (1989). For these reasons, "[a] conveyance of an interest in land must be in writing and comport with the statute of frauds." *Marina Bay Condos., Inc. v. Schlegel*, 167 Mich.App. 602, 606, 423 N.W.2d 284, 287 (1988). "To satisfy the statute of frauds, the writing or memorandum must be certain and definite as to the parties, property, consideration, premises and time of performance." *Id.*; *see also In re Skotzke Estate*, 216 Mich. App. 247, 249, 548 N.W.2d 695, 696 (1996). Compliance with the statute of frauds is assessed on a case-by-case basis. *See Forge v. Smith*, 458 Mich. 198, 206, 580 N.W.2d 876, 881 (1998).

1. There is no dispute about the diversity of the parties' citizenship—California versus Michigan. *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1332(c)(1)-(2); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267–68, 2 L.Ed. 435 (1806).

2. Separately, Susan Lorimer is also seeking $200,000.00 in punitive damages on her fraudulent misrepresentation claim. It is unclear, however, whether this punitive damages claim can be considered in the jurisdictional amount determination. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir.2001) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered ... unless it is apparent to a legal certainty that such cannot be recovered."); *Forge v. Smith*, 458 Mich. 198, 212, 580 N.W.2d 876, 884 (1998) ("A promise regarding the future cannot form the basis of a misrepresentation claim."); Barbara A. Patek, *et al.*, 2 *Michigan Law of Damages and Other Remedies* § 27.16 (3d ed. 2003) (Generally, "exemplary [or punitive] damages may be recovered only by the injured party."). Nonetheless, since the jurisdictional amount is satisfied through Susan Lorimer's injunctive relief claims, there is no need to dwell on the punitive damages issue at this juncture.

■ In this case, the purported contract in which Mary Katherine Lorimer agreed to convey land to Carlos Berrelez and Doranne Wunderlich–Berrelez in exchange for $50,000.00 or $55,000.00 plus interest is a contract for an interest in land covered by the statute of frauds. Moreover, Susan Lorimer has not provided the Court with a certain and definite writing or memorandum identifying this contract's parties, property, consideration, premises, and time of performance. Susan Lorimer further claims that there is a written contract, i.e., a note, detailing this promise to pay $50,000.000 or $55,000.00. However, this note is unsigned, and, by Susan Lorimer's own admission in her letter of July 28, 1992, this note, dated August 1992 (more than three years after the conveyance of the property), was a mere draft that she prepared with the hope that Carlos Berrelez and Doranne Wunderlich–Berrelez would sign it. *See* Lorimer Decl. at Ex. D ("If you don't like the note, you can do one yourselves [and] send [it] to us; we don't care."). As such, this document is not a contract—it does not show that there was a meeting of the minds. Further, as to the purported schedule-of-payments form relied upon by Susan Lorimer, this document is, at best, ambiguous with respect to the purported contract. It is uncertain and indefinite, and does not identify the parties or property at issue; thus, this document does not cure the statute-of-frauds problem in this case. Therefore, viewing the facts and drawing all reasonable inferences therefrom in a light most favorable to Susan Lorimer, the non-moving party, *see Winfield Collection Ltd. v. Gemmy Indus. Corp.,* 311 F.Supp.2d 611, 614 (E.D.Mich.2004) (Gadola, J.), Carlos Berrelez and Doranne Wunderlich–Berrelez are entitled to judgment as a matter of law on the breach-of-contract claims and the corresponding indebtedness claim. *See* Fed.R.Civ.P. 56(c); Mich. Comp. Laws § 566.106; Mich. Comp. Laws § 566.108.

■ Nonetheless, the statute of frauds does not preclude Susan Lorimer's fraudulent misrepresentation claim in count four because that tort claim is not dependant upon the enforceability of a contract. *See Coronet Dev. Co. v. F.S. W., Inc.,* 379 Mich. 302, 313, 150 N.W.2d 809, 814 (1967); *Novak v. Nationwide Mut. Ins. Co.,* 235 Mich.App. 675, 688, 599 N.W.2d 546, 553 (1999); *N. Plumbing & Heating, Inc. v. Henderson Bros., Inc.,* 83 Mich.App. 84, 93, 268 N.W.2d 296, 299 (1978); *Arndt v. Vos,* 83 Mich.App. 484, 487–88, 268 N.W.2d 693, 695 (1978).

Further, statute of frauds does not preclude Susan Lorimer from pursuing her claims for relief in equity—"[t]his is true even in the case of an oral contract for land." *Kent v. Bell,* 374 Mich. 646, 652–54, 132 N.W.2d 601, 604–05 (1965); *see also Arndt,* 83 Mich.App. at 487–88, 268 N.W.2d at 695. Thus, the statute of frauds does not bar Susan Lorimer's claims for equitable relief in counts five (constructive trust), six (equitable lien), and seven (rescission).

## C. Statute of Limitations

Carlos Berrelez and Doranne Wunderlich–Berrelez also raise a statute of limitations challenge. The Court will review the statute of limitations with respect to the four remaining counts.

■ At the motion hearing, Carlos Berrelez and Doranne Wunderlich–Berrelez argued that Susan Lorimer's fraudulent misrepresentation claim in count four is barred by the general three-year statute of limitations for tort actions. *See* Mich. Comp. Laws § 600.5805. However, the applicable limitations period for fraudulent misrepresentation claims is six years. *See Fagerberg v. Le Blanc,* 164 Mich.App. 349,

353–54, 416 N.W.2d 438, 441 (1987); Mich. Comp. Laws § 600.5813. Further, the limitations period begins to run when the misrepresentation was perpetrated and not when the plaintiff discovered or should have discovered the misrepresentation. *See Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 230–32, 661 N.W.2d 557, 559–60 (2003); Mich. Comp. Laws § 600.5827. In the complaint, Susan Lorimer alleges that Carlos Berrelez and Doranne Wunderlich–Berrelez knowingly and secretly made false promises (e.g., promises to make monthly payments) to obtain the property in question. Thus, the purported misrepresentation occurred in 1989, and, as a result, the limitations period expired in 1995. Susan Lorimer did not bring her misrepresentation claim until 2002. Consequently, viewing the facts and drawing all reasonable inferences therefrom in a light most favorable to Susan Lorimer, *see Winfield*, 311 F.Supp.2d at 614, Carlos Berrelez and Doranne Wunderlich–Berrelez are entitled to judgment as a matter of law on the fraudulent misrepresentation claim. *See* Fed.R.Civ.P. 56(c); Mich. Comp. Laws § 600.5813; Mich. Comp. Laws § 600.5827.

■ The Court will next turn to Susan Lorimer's constructive trust claim in count five and rescission claim in count seven. In seeking a constructive trust, Susan Lorimer requests an order declaring Carlos Berrelez and Doranne Wunderlich–Berrelez to be trustees of the property with the sole duty of conveying the property to Susan Lorimer. Similarly, in her rescission claim, Susan Lorimer requests an order rescinding the transfer of the property to Carlos Berrelez and Doranne Wunderlich–Berrelez (i.e., rescission of the quitclaim deed). Thus, these two claims are actions for the recovery of land, and, as a consequence, Susan Lorimer's constructive trust and rescission claims are governed by a fifteen-year statute of limitations. *See Blachy v. Butcher*, 221 F.3d 896, 910 (6th Cir.2000); *Coveyou Meadows Prop. Owners Ass'n v. Coveyou*, No. 204778, 1999 WL 33453955, at *5 (Mich.App. Feb. 23, 1999); Mich. Comp. Laws § 600.5801(4); Mich. Comp. Laws § 600.5815. *Cf. Badon v. Gen. Motors Corp.*, 188 Mich.App. 430, 435, 470 N.W.2d 436, 439 (1991). In this case, the conveyance occurred in 1989, and Susan Lorimer brought her constructive trust and rescission claims in 2002 before the fifteen-year period expired in 2004. Therefore, Susan Lorimer's constructive trust and rescission claims are not barred by the statute of limitations.[3]

■ On the other hand, Susan Lorimer's equitable lien claim in count six is not an action for the recovery of lands. An equitable lien is a remedy that awards a nonpossessory interest in property to a party who "has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled." *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 53–54, 503 N.W.2d 639, 643 & n. 13 (1993) (quoting *Cheff v. Haan*, 269 Mich. 593, 598, 257 N.W. 894, 896 (1934)). Furthermore, "allegations ... in the nature of fraud, mistake, or injury to financial expectations [are] causes of action which are subject to a six-year limitation period." *Badon*, 188 Mich.App. at 435, 470 N.W.2d at 439; Mich. Comp. Laws § 600.5813. Thus, it would appear that, like the fraudulent misrepresentation claim discussed above, the equitable relief claim would be barred by the statute of limitations.

■ However, the statute of limitations is only half of the analysis. Claims in equity, such as this claim for an equitable lien, are governed by the doctrine of laches. *See id.* This doctrine has two ele-

---

3.  *See also infra* (discussion of laches).

ments: (1) an unreasonable delay by the plaintiff in bring the claim and (2) prejudice to the defendant. *See Pub. Health Dep't v. Rivergate Manor,* 452 Mich. 495, 507, 550 N.W.2d 515, 520; *Badon,* 188 Mich.App. at 436, 470 N.W.2d at 439; *see also DirecTV, Inc. v. Thomas,* 329 F.Supp.2d 949, 953, 2004 WL 1795005, at *5 (E.D.Mich.2004) (Gadola, J.). By raising a statute of limitations challenge, Carlos Berrelez and Doranne Wunderlich–Berrelez have implicitly addressed the first half of the laches argument; nonetheless, they have not addressed the prejudice prong of the argument. Moreover, they have never explicitly raised a laches defense. *See* Def. Mot. at 1–8; Def. Aff. Defs. at 1–3. Consequently, Carlos Berrelez and Doranne Wunderlich–Berrelez have waived the right to assert a laches defense. *See Rowry v. Univ. of Mich.,* 441 Mich. 1, 12, 490 N.W.2d 305, 309 (1992) ("In failing to raise laches in its responsive pleadings or by motion, the defendant has waived this affirmative defense."); *Badon,* 188 Mich.App. at 436–37, 470 N.W.2d at 439.

## III. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that the dispositive motion filed by Carlos Berrelez and Doranne Wunderlich–Berrelez [docket entry 13] is **GRANTED IN PART** and **DENIED IN PART:** Carlos Berrelez and Doranne Wunderlich–Berrelez are entitled to summary judgment with respect to counts · one, two, three, and four of the complaint, but Susan Lorimer may proceed to trial on counts five, six, and seven of the complaint.

**SO ORDERED.**