UNITED PAPERWORKS INTERNATIONAL, LOCAL # 395, United Paperworkers International, Local # 766, Plaintiffs–Appellees,

v.

ITT RAYONIER, INC., Defendant–Appellant.

No. 90–3675.

United States Court of Appeals, Eleventh Circuit.

May 20, 1991.

Guy O. Farmer, II, Jacksonville, Fla., for defendant-appellant.

John F. MacLennan, Jacksonville, Fla., for plaintiffs-appellees.

Before FAY, COX and MARKEY [*], Circuit Judges.

COX, Circuit Judge:

United Paperworkers International, Local No. 395 and Local No. 766 (the Union), initiated this action to compel ITT Rayonier, Inc. (ITT) to arbitrate a dispute between the parties, pursuant to a collective bargaining agreement. The issue on appeal is the proper statute of limitations to be applied to this suit. The district court concluded that a one-year statute of limitations found in Florida law, instead of a six-month limitation period found in federal law, applies. We agree with the district court and affirm.

## I. BACKGROUND

The relevant facts are undisputed. The relationship between the Union and ITT is governed by a collective bargaining agreement.[1] That agreement sets out a procedure for resolving disputes "as to the interpretation or application of this Agreement...."[2] The final step in that procedure, if preliminary steps do not resolve the dispute, is the referral of the dispute to an impartial arbitrator.[3] On July 11, 1988, representatives of each of the local unions in this case filed a grievance; the grievance concerned the subcontracting out of work previously performed by members of the Union. By letter, ITT communicated to the Union its notice of refusal to arbitrate on July 15, 1988. The Union filed this action on June 27, 1989, under section 301 of the Labor Management Relations Act (LMRA)[4], seeking an order compelling ITT to arbitrate the dispute. The Union argues the action is governed by Florida's one-year statute of limitations for bringing an action for specific performance of a contract.[5] ITT contends the six-month statute of limitations found in section 10(b) of the LMRA[6] should be applied in this case.

---

[*] Honorable Howard T. Markey, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. 1983 Collective Bargaining Agreement between ITT Rayonier Fernandina Division and UPIU Local 395 and 766, R. 1–8–Exh.IA.

2. *Id.* at § 6(A)(1).

3. *Id.* at §§ 6(A)(d), 6(B).

4. Section 301 of the LMRA provides in pertinent part:

§ 185.  **Suits by and against labor organizations:**

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

5. The statute provides in pertinent part:

**95.11  Limitations other than for the recovery of real property**

Actions other than for recovery of real property shall be commenced as follows:

(5) Within one year.—

(a) An action for specific performance of a contract.

Fla.Stat.Ann. § 95.11(5)(a) (West Supp.1990).

6. Section 10(b) of the LMRA provides in pertinent part:

(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated

The parties agree that if the six-month statute applies, this action is barred, but that if the one-year statute applies, the action was timely filed.

The district court, in ruling on ITT's motion for summary judgment, and in a thoroughly-researched and well-reasoned opinion, agreed with the Union's position that the one-year statute applies and denied ITT's motion. *United Paperworkers Int'l Local 395 v. ITT Rayonier, Inc.*, 740 F.Supp. 833 (M.D.Fla.1990). In a separate order, the court granted the Union's motion for summary judgment, denied ITT's cross-motion for summary judgment and ordered ITT to arbitrate the dispute pursuant to the collective bargaining agreement. *United Paperworkers Int'l Local 395 v. ITT Rayonier, Inc.*, 752 F.Supp. 427 (M.D.Fla.1990). ITT appeals and asserts the district court erred in concluding that the one-year statute of limitations applies to this suit.

## II. DISCUSSION

### A. *General principles*

Congress sometimes fails to supply a statute of limitations when it creates a federal cause of action. "When that occurs '[w]e have generally concluded that Congress intended that courts apply the most closely analogous statute of limitations under state law.'" *Reed v. United Transp. Union*, 488 U.S. 319, 323, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989) (quoting *Del-Costello v. International Brd. of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983)). However, because "[s]tate legislatures do not devise their limitations periods with national interests in mind ... it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national poli-

cies." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977). Therefore, there is an exception to the general rule that statutes of limitation are to be borrowed from state law. A court should decline to borrow a state statute of limitations only " 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.' " *Reed*, 488 U.S. at 324, 109 S.Ct. at 625 (quoting *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294); *see also Pruitt v. Carpenters' Local 225*, 893 F.2d 1216, 1219–20 (11th Cir.1990). The Supreme Court has emphasized that this exception is "narrow" and "closely circumscribed," and that "application of a federal statute will be unusual," while " 'resort to state law remains the norm for borrowing limitations periods.' " *Id.* (quoting *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294). ITT asserts this exception applies; the Union argues we should apply the general rule.

The narrow exception to the general rule of borrowing state statutes of limitation was created by the Supreme Court in *Del-Costello v. International Brd. of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). *DelCostello* involved a "hybrid" claim under section 301.[7] The Court decided the six-month limitation period contained in section 10(b) was more appropriate for such actions than was a 90–day state statute of limitations for actions to vacate arbitration awards. The question whether the section 10(b) limitation period should apply to straightforward section 301 claims was left unanswered.

---

agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made....
29 U.S.C. § 160(b).

7. In a hybrid section 301 claim, "a union member sues his employer for breach of the collective bargaining agreement, while also contending that his union breached its duty of fair representation." *International Ass'n of Machinists v. Allied Prods. Corp.*, 786 F.2d 1561, 1563 (11th Cir.1986). A "straightforward" section 301 claim involves a union suing an employer for breach of a collective bargaining agreement. *Id.*

The Supreme Court emphasized the narrowness of the *DelCostello* exception in *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). In *Reed*, an employee alleged that his union violated his right to free speech under section 101(a)(2) of Title I of the Labor–Management Reporting and Disclosure Act of 1959.[8] The suit was not filed until two years after the last complained-of event had occurred.

The Supreme Court held the section 10(b) limitation period not applicable. *Reed*, 488 U.S. at 334, 109 S.Ct. at 630. To support this decision, the Court stated first, that the employee's section 101 action found a closer analogy in state personal injury law than in federal labor law. *Reed*, 488 U.S. at 326–27, 109 S.Ct. at 626–27. Turning next to the "practicality/policy" prong of the *DelCostello* exception, the Court stated that the case before it raised none of the practical problems that had been raised in *DelCostello*. The problem in *DelCostello*, the Court explained, lay in the 90–day limitation period that governed state suits to vacate arbitration awards: the typical labor plaintiff could hardly be expected, within such a short time, to identify his or her injury, retain counsel, and file a complaint. *Reed*, 488 U.S. at 328 n. 4, 109 S.Ct. at 627–28 n. 4. Along these same lines, the Court stated that practical problems would most likely arise "where distinct forms of action are combined, making the possibility of finding a single analogous state statute more remote."[9] *Id.* Finally, the *Reed* Court stated that intra-union disputes often fail to implicate sufficiently the national policy concerns balanced by section 10(b)'s six-month period. *Reed*, 488 U.S. at 330, 109 S.Ct. at 628–29.

With this background in mind, we begin our analysis. We assume the general rule of borrowing state statutes of limitation applies unless (1) a rule from federal law "'clearly provides a closer analogy than available state statutes' and (2) 'the federal

policies at stake and the practicalities of litigation make that [federal] rule a significantly more appropriate vehicle for interstitial lawmaking.'" *Pruitt v. Carpenters' Local 225*, 893 F.2d 1216, 1220 (11th Cir. 1990) (quoting *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294) (brackets in original).

**B.** *Is there a closer analogy in federal law?*

The Union argues, and the district court held, that the state law cause of action for specific performance of a contract provides a closer analogy to the Union's action to compel arbitration than does the federal cause of action for unfair labor practices. We agree with that conclusion.

An action for specific performance of a contract is closely analogous to an action to compel arbitration. We need go no further than the Supreme Court's decision in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), to demonstrate this. In *Lincoln Mills*, the Court had to decide whether the Norris–LaGuardia Act withdrew jurisdiction to compel arbitration of grievance disputes. In answering the question in the negative, the Court stated, "we see no justification in policy for restricting § 301(a) to damage suits, leaving specific performance of a contract to arbitrate grievance disputes to the inapposite procedural requirements of that Act." *Id.* at 458, 77 S.Ct. at 918. It is clear, then, that the Supreme Court has characterized a suit to compel arbitration as a suit for specific performance of a contract to arbitrate grievance disputes. Our circuit has done likewise. *See, e.g., South Western Bell Tel. Co. v. Communications Workers of Am.*, 454 F.2d 1333, 1336 (5th Cir.1971)[10] (need uniform standard of arbitrability, "regardless of whether the suit asks for the injunction of a strike ... or the specific performance of an arbitration clause"); *Haynes v. United States Pipe & Foundry Co.*, 362 F.2d 414,

---

**8.** 29 U.S.C. § 411(a)(2).

**9.** The Court referred here to hybrid claims, which combine two distinct causes of action.

**10.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

417 (5th Cir.1966) (under *Lincoln Mills,* district courts have jurisdiction to "grant specific performance of arbitration provisions contained in collective bargaining agreements"); *Refinery Employees Union v. Continental Oil Co.,* 268 F.2d 447, 452 (5th Cir.), *cert. denied,* 361 U.S. 896, 80 S.Ct. 199, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959) (district court, before ordering "specific performance of a contract to arbitrate," must first determine whether defendant has contracted to arbitrate the matter); *Lodge 12, Dist. 37, Int'l Ass'n of Machinists v. Cameron Iron Works, Inc.,* 257 F.2d 467, 474 (5th Cir.), *cert. denied,* 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110 (1958) (*Lincoln Mills* established authority of district courts to decree "specific performance of collective bargaining contracts to arbitrate"); *see also Seaboard Coast Line R.R. Co. v. Trailer Train Co.,* 690 F.2d 1343, 1351 (11th Cir.1982) (court, in discussing arbitration provision in non-labor context, stated that "an order to arbitrate under the Federal Arbitration Act is 'simply an order granting specific performance of an arbitration provision'" (quoting *Necchi v. Necchi Sewing Mach. Sales Corp.,* 348 F.2d 693, 696 (2d Cir.1965))); *Kentucky W. Virginia Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, Local 3–510,* 549 F.2d 407, 412 (6th Cir.1977) ("It is settled that a federal court may order specific performance of provisions for arbitration contained in collective bargaining agreements." (citing *Lincoln Mills* )); *see also Local 149 of the Am. Fed'n of Technical Engr's. v. General Elec. Co.,* 250 F.2d 922, 929–30 (1st Cir.1957), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958) (district court, before undertaking to decree specific performance of a contract for arbitration, must first determine if refusal to arbitrate violates collective bargaining agreement (cited approvingly in *Refinery Employees, supra* )); *Local 1055, IBEW v. Gulf Power Co.,* 175 F.Supp. 315, 317 (N.D. Fla.1959) (grievances arising under a collective bargaining agreement when arbitrable "are unequivocally enforceable through specific performance" in the district courts). Common sense tells us that the Union's action was simply intended to obtain an order from the district court to compel ITT to perform what the Union sees as ITT's end of the bargain. A closer analogy is difficult to imagine.

ITT asserts that the closer analogy to the Union's cause of action is an action for unfair labor practices under section 10(b). ITT argues that collective bargaining agreements and commercial contracts are fundamentally dissimilar and as a result, the policies that support section 10(b) and Fla.Stat. § 95.11(5)(a) are not the same. In making this argument, ITT relies principally on *Communications Workers of America v. Western Electric Co.,* 860 F.2d 1137 (1st Cir.1988). The *Western Electric* court stated that "arbitration clauses are *sui generis* and cannot, as a matter of federal law, be viewed as equivalent to more ordinary contractual provisions for limitation purposes." *Id.* at 1141. The court believed an action to compel arbitration under a collective bargaining agreement is not analogous to a suit for specific performance because of the federal policies at stake in the former. We believe this view misapprehends the two-step approach reaffirmed in *Reed.* The first step requires an examination of the cause of action to determine whether another state or federal cause of action is more analogous. The second step requires an examination of the federal policies at stake. The *Western Electric* court combined the two steps. We will look at federal policy in the second part of our analysis. For now, we hold that an action to compel arbitration under a collective bargaining agreement is more analogous to a suit for specific performance of a contract provision than to an action for unfair labor practices.

### C. *Federal Policies/Practicalities of Litigation*

The second part of our analysis requires that we determine whether the federal policies at stake and the practicalities of litigation make the federal statute of limitations a "significantly more appropriate vehicle for interstitial lawmaking." *Reed,* 488 U.S. at 324, 109 S.Ct. at 625.

First, there are no practicalities of litigation present here that make the federal rule more appropriate. In *DelCostello*, the Court cited as one reason for choosing the federal rule the fact that the state statute of limitations for vacating arbitration awards was just 90 days. The Court concluded that the state rule "fail[ed] to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights...." *DelCostello*, 462 U.S. at 166, 103 S.Ct. at 2291. No such practical problem is present here.

Further, because the Union asserts a straightforward section 301 claim, and not a hybrid claim, another practical concern present in *DelCostello* is absent here. "[A] hybrid § 301/fair representation action yokes together interdependent claims that could only very impractically be treated as governed by different statutes of limitations. Departure from the normal practice of borrowing state statutes of limitation is more likely to be necessary where distinct actions are combined, making the possibility of finding a single analogous state statute more remote." *Reed*, 488 U.S. at 328 n. 4, 109 S.Ct. at 628 n. 4 (citations omitted). Therefore, no practical considerations make the federal rule more appropriate and we now turn to policy considerations.

ITT argues that choosing the federal rule would protect two important federal interests, the need for uniformity in federal labor law and the policy of rapidly resolving labor disputes. We agree, of course, that these are important federal interests. It is clear, however, that the need for uniformity is not of itself enough to override the general rule that we should borrow state statutes of limitations. If it were enough, the *Reed* Court would have been compelled to choose the federal over the state rule.

ITT contends that applying the six-month limitation period of section 10(b) promotes the rapid settlement of industrial disputes. ITT fails to explain why applying a one-year limitation period disserves this interest other than to assert that one year is twice as long as six months. Our task is to

decide whether a one-year period, although twice as long as the federal period, "frustrate[s] or significantly interfere[s] with federal policies." *Reed*, 488 U.S. at 327, 109 S.Ct. at 627.

Although one-year is admittedly twice as long as six-months, it is difficult to see how a statute of limitations that is only six months longer could frustrate or significantly interfere with the federal interest in resolving labor disputes quickly. ITT's contention that the section 10(b) period is more appropriate here because the state statute of limitations is twice as long "fails to take seriously [the Supreme Court's] ... admonition that state statutes of limitation are to be used unless they frustrate or significantly interfere with federal policies." *Reed*, 488 U.S. at 327, 109 S.Ct. at 627.

We also note that a suit to compel arbitration " 'does not affect any interpretation or effect any reinterpretation of a collective bargaining agreement.... There is no erosion of the finality of private settlements.' " *Reed*, 488 U.S. at 330, 109 S.Ct. at 629 (quoting *Doty v. Sewall*, 784 F.2d 1, 7 (1st Cir.1986)). The Union is not seeking to overturn a settled agreement, it is seeking to enforce one. Although federal interests in the relationship between labor and employers are tangentially implicated, those interests are not directly affected as they are in hybrid suits. Hybrid suits, unlike suits to compel arbitration, constitute a direct challenge to private-dispute settlement under a collective bargaining agreement. *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291. We hold that the one-year state statute of limitations, although it interferes to some small degree with the federal policy of resolving labor disputes rapidly, does not frustrate or significantly interfere with that or any other federal policy. Therefore, ITT has failed to satisfy the second prong of the test.

ITT further contends that our circuit has already decided the question presented here and has determined that the federal statute of limitations should be applied in cases such as this. We disagree. All four

cases ITT cites to support this proposition are distinguishable.

Three of the cases cited by ITT are easily dismissed because they involved "hybrid suits," just as *DelCostello* did. These cases are therefore not on point. *See Hill v. Georgia Power Co.*, 786 F.2d 1071 (11th Cir.1986); *Simon v. Kroger Co.*, 743 F.2d 1544 (11th Cir.1984), *cert. denied*, 471 U.S. 1075, 105 S.Ct. 2155, 85 L.Ed.2d 511 (1985); *Howard v. Lockheed–Georgia Co.*, 742 F.2d 612 (11th Cir.1984). The other case cited by ITT, *International Association of Machinists & Aerospace Workers, Local 1688 v. Allied Products Corp.*, 786 F.2d 1561 (11th Cir.1986), along with another case ITT might have cited for the same proposition, *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881 (11th Cir.1985), do involve straightforward section 301 claims. In both cases, this court rejected state limitation periods and adopted the federal six-month statute of limitations.

*Samples* arose from Georgia and pre-dates the Supreme Court's decision in *Reed*. The *Samples* court adopted the section 10(b) limitation period for a straightforward section 301 action brought by a union against an employee for enforcement of an arbitration award. The court noted that Georgia has no specific statute of limitations for actions to enforce arbitration awards; such actions are treated like judicial determinations [11] and are enforceable subject to a seven-year dormancy provision.[12] The court next looked to Georgia's statute of limitations for actions to enforce contracts, which is six years.[13] Both options were rejected principally because they were too lengthy, and the court adopted the section 10(b) limitation period.

*Allied Products* arose in Alabama and also predates *Reed*. There, as here, a union sought to compel arbitration pursuant to a collective bargaining agreement. The court noted that Alabama law provides no statute of limitations for actions to compel arbitration and a six-year statute of limitations for contract actions generally.[14] This lengthy limitation period, the court said, "contravenes the federal policy of the prompt resolution of labor disputes." *Allied Prods.*, 786 F.2d at 1564.

Consequently, both *Samples* and *Allied Products* are distinguishable. Both courts had to choose between six months and six years. Given the federal interest in the speedy resolution of labor disputes, it is not surprising that each court chose the six-month period. We do not believe that the choices made in those cases mean that we must always choose the shorter limitation period. Indeed, the result in *DelCostello* (where a lengthier limitation period was chosen) counsels just the opposite. We further note that what we have said about *Samples* and *Allied Products* may be said of the cases from other circuits cited by ITT. Those cases presented similar choices: the alternatives to the section 10(b) period were either much lengthier periods or much shorter periods; none of the cases presented a one-year period as an alternative to the section 10(b) period. In addition, many of those cases concerned state causes of action (such as breach of contract or an action to vacate an arbitration award) which are not as analogous to the federal cause of action as the analogy present in this case.[15]

## III. CONCLUSION

ITT has failed to establish that the narrow *DelCostello* exception is applicable in this case. Therefore, we hold that under the general rule that state statutes of limitation should be borrowed where Congress fails to provide a federal statute of limitations, the appropriate limitation period in this case is that found in Fla.Stat. § 95.11(5)(a)—one year. The action was

---

11. *See* O.C.G.A. § 9–9–47(b).

12. O.C.G.A. § 9–12–60.

13. O.C.G.A. § 9–3–24.

14. Ala.Code § 6–2–34.

15. We will not list the cases cited by ITT here because the district court opinion has already done so. *See United Paperworkers Int'l Local 395 v. ITT Rayonier, Inc.*, 740 F.Supp. 833, 839 (M.D.Fla.1990).

timely filed and the district court's order is AFFIRMED.

AFFIRMED.