**DIRECTV, INC., Plaintiff,**

v.

**John WRIGHT, Defendant.**

**No. CIV.A. 1:04CV0242RWS.**

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 14, 2004.

Robin L. Gentry, Needle & Rosenberg, Atlanta, GA, Mark Edwin Henderson, David C. Holloway, Russell Adam Korn, Michael I. Krause, Jerry Chieh Liu, William Franklin Long, III, Sutherland Asbill & Brennan, Atlanta, GA, for DirecTV, Inc., Plaintiff.

## ORDER

STORY, District Judge.

Now before the Court for consideration is Defendant's Motion to Dismiss [8–1]. After considering the entire record and the arguments of the parties, the Court enters the following Order.

### Background

Plaintiff DirecTV, Inc. ("DirecTV") is a California company in the business of providing television programming to millions of subscribers in the United States through a digital satellite system.[1] DirecTV sells programming to customers and provides different levels of programming to different customers based on the particular subscription package the customer purchases. To prevent unauthorized access to its programming, DirecTV employs a conditional access system which encrypts its satellite transmissions. Subscribing customers are provided access cards that, upon activation with DirecTV, allow customers to decrypt and view the DirecTV programming to which they have subscribed.

DirecTV generates its revenues through sales of subscription packages, and therefore, devotes substantial resources to the development and improvement of its conditional access system. DirecTV's need to develop increasingly sophisticated security measures is driven by "pirates"—individuals who seek to circumvent DirecTV's security measures to gain unlimited access to DirecTV programming. One of the primary means by which pirates attempt to gain access to DirecTV programming is through the use of various hardware and software devices designed to disable the security of the access card.

On January 24, 2002, DirecTV executed a writ of seizure with the assistance of the United States Marshall's Office on Michael Worley and EQ Stuff, Inc. ("EQ Stuff"). Plaintiff asserts that EQ Stuff specialized in the sale of pirate access devices and other equipment used to illegally receive DirecTV's satellite signals. Pursuant to the writ, DirecTV obtained business records from EQ Stuff. These business records show that EQ Stuff sold to Defendant John Wright several items including: an "EQ Smartcard Glitcher" (unlooper); (2) an "EQ Zapulator;" and (3) and "EQ Atmel Programming." Defendant's purchases were made on September 19, 2001 and September 25, 2001.

Plaintiff filed suit under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605(a) (the "FCA") and the Electronic Communications Privacy Act, (the "Wiretap Act"), 18 U.S.C. §§ 2510–21. Plaintiff asserts claims for: (1) Unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); (2) Importation of pirate access devices in violation of 47 U.S.C. § 605(e)(4); (3) Unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1); and (4) Possession of pirate access devices in violation of 18 U.S.C. § 2512(1)(b). Defendant's motion to dismiss contends that Plaintiff's claims should be dismissed because the statute of limitations has expired.

### Discussion

**I. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. In considering whether to grant or deny such a motion, the Court may look only to the pleadings. Fed.R.Civ.P. 12(b). In addition, the pleadings are construed broadly so that all facts pleaded therein

---

**1.** The facts are taken from Plaintiff's Complaint.

are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Conner v. Tate*, 130 F.Supp.2d 1370, 1373 (N.D.Ga.2001). Thus, a motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Linder v. Portocarrero*, 963 F.2d 332 (11th Cir.1992). Motions to dismiss are disfavored and are rarely granted. *Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897, 900 (5th Cir.1978); *Woodham v. Fed. Transit Admin.*, 125 F.Supp.2d 1106, 1108 (N.D.Ga. 2000).

■ As a preliminary matter, Count IV of Plaintiff's Complaint is due to be dismissed. Recently, the Eleventh Circuit Court of Appeals ruled that 18 U.S.C. § 2512 does not create a private right of action. *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th Cir.2004). Accordingly, Count IV of Plaintiff's Complaint is hereby **DISMISSED**.

## II. Counts I and II

Counts I and II of Plaintiff's Complaint arise under the FCA, 47 U.S.C. § 605. Defendant's *pro se* Motion to Dismiss does not specifically address the individual counts in Plaintiff's Complaint but generally asserts that the statute of limitations for Plaintiff's actions is 18 U.S.C. § 2520(e) and therefore the Court should dismiss Plaintiff's Complaint with prejudice. As to the § 605 claims, Plaintiff responds that the statute of limitations for 47 U.S.C. § 605(e)(4) is the three year statute of limitations of the Copyright Act, 17 U.S.C. § 507(b), and so the Complaint was timely filed.

■ In order to determine whether Plaintiff's § 605 claims were timely filed, the Court must first determine the applicable statute of limitations. Determining the statute of limitations for activity under a federal statute is governed by federal law. *Kingvision Pay–Per–View, Corp. v. 898 Belmont, Inc.*, 366 F.3d 217, 220 (3d Cir. 2004). The FCA does not provide a statute of limitations for actions under 47 U.S.C. § 605. When Congress fails to supply a statute of limitations for a federal cause of action, the courts "have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." *United Paperworks Int'l Local # 395 v. ITT Rayonier, Inc.*, 931 F.2d 832, 834 (11th Cir.1991) (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)). The Supreme Court has made it clear that state statutes are the "lender of first resort" and this practice is "longstanding" and "settled." *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995). "Since 1830, 'state statutes have repeatedly supplied the periods of limitations for federal causes of action' when federal legislation made no provision.'" *Id.* at 33–34, 115 S.Ct. 1927 (quoting *Automobile Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966)). Moreover, it is appropriate and realistic to presume that Congress was familiar with this precedent and expected its enactments to be interpreted in conformity with it. *North Star Steel*, 515 U.S. at 34, 115 S.Ct. 1927.

The Supreme Court has recognized, however that "[s]tate legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of

national policies." *Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 367, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Therefore, where application of the state limitations period would stymie the policies underlying the federal cause of action, the court may look to a limitations period provided by an analogous federal law which is more in harmony with the objectives of the cause of action. *North Star Steel*, 515 U.S. at 34, 115 S.Ct. 1927. The reference to federal law, however, is the exception and the court will "decline to apply a state limitations period only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of the litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* (internal quotations omitted); *see United Paperworks Int'l*, 931 F.2d at 835.[2]

■ Here, the parties failed to fully address the question of the appropriate statute of limitations. Plaintiff contends that the three-year statute of limitations found in the Copyright Act applies to its claims under § 605. By contrast, broadly construing Defendant's *pro se* motion, he argues for the application of the two-year statute of limitations found in the Wiretap Act. This Court's own review of the applicable caselaw suggests that both parties' arguments find some support in the cases. *Compare Prostar v. Massachi*, 239 F.3d 669, 677 (5th Cir.2001) (applying three-year federal Copyright Act limitations period to claims under § 605); *Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co.*, 255 F.Supp.2d 307, 314 (S.D.N.Y.2003) (same); *DirecTV v. Brady*, No. A 03–1450, 2004 WL 1752853, at *3 (E.D.La. Aug.4, 2004) (same) *with, DirecTV v. Johnson*, No. 03 C 8504, 2004 WL 2011392, at *3 (adopting two-year statute of limitations from Wiretap Act to § 605 claims). It appears to the Court, however, that the parties have skipped over the primary inquiry by going directly to a federal law analogy for the applicable statute of limitations. *See North Star Steel*, 515 U.S. at 34, 115 S.Ct. 1927 (stating that state statutes are the "lender of first resort").

Prior to considering the applicability of a federal law limitations period, the Court must first determine whether state law provides an appropriate analogous statute. *North Star Steel*, 515 U.S. at 34, 115 S.Ct. 1927; *Kingvision*, 366 F.3d at 221 ("if there is an analogous state limitations period, absent any impediment of implementation of national policies if that state period is applied, courts are not required to examine federal limitations periods.") The Court declines to follow the parties' suggestions that a federal statute of limitations is appropriate because the Court finds that Georgia law lends an appropriate state statute of limitations that is both consistent with federal substantive law and would not have an overly burdensome effect on the practicalities of litigation. *See Harrison v. Digital Health Plan*, 183 F.3d 1235, 1239 (11th Cir.1999) (applying state statute of limitations to ERISA claims and noting that Georgia was the forum state and looking to Georgia law for the most analogous state law).

The Supreme Court has yet to consider the question of the statute of limitations for claims brought under 47 U.S.C. § 605. The two Circuit Courts of Appeal that have considered the question have reached different results under similar facts. Both

---

**2.** Another exception recognized by the Supreme Court but not applicable in this case is provided by 28 U.S.C. § 1658 (1988), which provides a general four-year statute of limitations for federal statutes passed after December 1, 1990 that do not contain their own limitations period. *See North Star Steel*, 515 U.S. at 34, 115 S.Ct. 1927.

Court of Appeals cases involved the unauthorized broadcast of a boxing match. The first to consider the question was the Fifth Circuit in *Prostar v. Massachi*, 239 F.3d 669 (5th Cir.2001). In *Prostar*, the Fifth Circuit found that the closest state law in Louisiana was for the tort of conversion which provided for a one-year statute of limitations. *Id.* at 675. In holding that the three-year limitations period of the Copyright Act provided a "closer fit" than conversion, *id.* at 677, the court emphasized the "multi-state nature" of actions brought under the FCA and noted that cable broadcasts are routinely conducted on a national and international scale. *Id.* at 676. Additionally, the Fifth Circuit emphasized the uniformity that would result from the application of federal law and stated that application of state conversion law would result in widely varying limitations periods. *Id.* The court stated that application of a single federal standard would eliminate these practical difficulties and would facilitate resolution of the national problems addressed by the FCA. *Id.* at 677.

By contrast, the Third Circuit in *Kingvision Pay–Per–View, Corp. v. 898 Belmont, Inc.*, 366 F.3d 217 (3d Cir.2004), distinguished the *Prostar* decision and declined to apply the federal law limitations period. First, the Third Circuit noted that Pennsylvania's piracy statute, 18 Pa. Const. Stat. Ann. § 910, provided a closer state law analogy than did the general conversion law at issue in *Prostar*. *Id.* at 223–24. The court also rejected the Fifth Circuit's emphasis on uniformity as it related to the length of the limitations periods and noted that the "national concerns of the cable industry are relevant only insofar as they are embodied in the FCA." *Id.* at 224. Finally, the court held that the state piracy laws provided a closer analogy than the Copyright Act. *Id.* at 225.

The Court is persuaded that applying the proper analysis as articulated by the Supreme Court in *North Star Steeli.e.*, applying the general rule that the lender of first resort is state law. Georgia law provides an appropriate state law analogy and the Court need not look to federal law. In selecting the state limitations period most relevant to the federal cause of action, the court must first characterize the essential nature of the plaintiff's claim. *Harrison*, 183 F.3d at 1239. The FCA was created "[f]or the purpose of regulating interstate and foreign commerce in communication ... so as to make available, so far as possible, to all the people of the United States ... a rapid, efficient ... communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151. Specifically, Congress passed § 605 to prevent unauthorized interception of cable transmissions, including interception through unauthorized use of decoding devices. *Kingvision*, 366 F.3d at 225.

Similarly, Georgia law provides for civil and criminal penalties for theft of telecommunication services. O.C.G.A. § 46–5–2.[3] Under that code section

3.
"Telecommunication service" means any service provided for a charge or compensation to facilitate the origination, transmission, emission, or reception of signs, signals, data, writings, images, sounds, or intelligence of any nature by telephone or telephone service, including public pay telephones, or cable television service (CATV), including cellular or other wireless telephones, wire, radio, electromagnetic, photoelectronic, or photo-optical system.
O.C.G.A. § 46–5–3(a)(1). The law was amended in 1996 to broaden its scope. The law now provides protection to telephone, cable television, cellular and other wireless telephone services. *See Review of Selected 1996 Georgia Legislation*, 13 Ga. St. U.L.Rev. 290 (November 1996).

[i]t shall be unlawful for any person to avoid or attempt to avoid or to cause another to avoid the lawful charges, in whole or in part, for any telecommunication service ... or for the transmission of a message, signal, or other communication by telephone or telegraph or over telecommunication or telegraph facilities by the use of any fraudulent scheme, means, or method, or by the use of any unlawful telecommunication device ... or other mechanical, electric, or electronic device

O.C.G.A. § 46–5–2(a). Section (b)(4) provides for a civil cause of action and states that

Any person, corporation, or other entity aggrieved by a violation of this Code section may, in a civil action in any court of competent jurisdiction, obtain appropriate relief, including preliminary and other equitable or declaratory relief, compensatory and punitive damages, reasonable investigation expenses, cost of suit, and reasonable attorney's fees.

The statute of limitations for this code section is four years.[4] The Georgia code section, though not identical to the federal law, is substantially similar in substance to § 605. For instance, the Georgia statute provides for appropriate relief in a civil action including "preliminary and other equitable or declaratory relief, compensatory and punitive damages, reasonable investigation expenses, cost of suit and reasonable attorney's fees." O.C.G.A. § 46–5–2(b)(4). Likewise, § 605 provides for injunctive relief, damages, costs and attorneys' fees. 47 U.S.C. § 605(e)(3)(B). Both the Georgia law and the FCA provide for criminal penalties. Compare O.C.G.A. § 46–5–2(b)(1)–(3) with, 47 U.S.C. § 605(e)(1)-(3). Additionally, both statutes provide for increased penalties for the willful violations for the purposes of commercial advantage or financial gain. Compare O.C.G.A. § 46–5–2(b)(5)(D) with, 47 U.S.C. § 605(e)(3)(C)(ii).

The Georgia law is parallel in substance and form to the FCA. It is not at odds with the purpose or operation of federal substantive law. North Star Steel, 515 U.S. at 34, 115 S.Ct. 1927. Moreover, the Court is not persuaded by the need for uniformity as discussed in the Fifth Circuit's decision in Prostar, but rather finds the Third Circuit's decision in Kingvision the more compelling argument. In rejecting the Fifth Circuit's uniformity analysis, the Third Circuit recounted three points that should be considered in determining whether the court should apply the exception to the "general rule" in favor of state law as enunciated in North Star Steel. Kingvision, 366 F.3d at 222. First, the Third Circuit emphasized that a general preference for uniformity, even to avoid forum shopping, was not a sufficient reason to apply federal law. Id.; see North Star Steel, 515 U.S. at 36, 115 S.Ct. 1927. Second, the court stated that the desire to unify the limitations periods of federal laws with similar purposes is not a sufficient reason to apply the exception. Id. Finally, the court recognized a difference between the uniformity in construing the substantive elements of a statute for purposes of determining what type of state law is most analogous versus the uniformity in the result, i.e. the length of the limitations period. Id.

---

4. Georgia law provides a four-year limitations period for "[a]ctions for injuries to personalty." O.C.G.A. § 9–3–31. Here, Plaintiff alleges that Defendant has injured the property interest that it holds in its programming and the revenue that it receives from selling that programming. Likewise, "[a]ctions for the recovery of personal property, or for damages for the conversion or destruction of the same" also provides for a four-year limitations period. O.C.G.A. § 9–3–32.

Moreover, insofar as the Fifth Circuit relied on the "multi-state nature" of the violations, the Court agrees with the Third Circuit that "violations of the Cable Act . . . are particular acts which are pursued in the locations where they occur." *Kingvision*, 366 F.3d at 224. In *Prostar*, the Fifth Circuit discussed the Supreme Court's decision in *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). In *Malley–Duff*, the Court applied the four-year statute of limitations from the Clayton Act to federal RICO claims rather than individual state laws. The Court emphasized the practicalities of RICO litigation and recognized that RICO cases commonly involve interstate transactions and that predicate acts may often occur in several states. *Id.* at 154, 107 S.Ct. 2759. This kind of "multi-state" case, which may involve actions in multiple states in a single cause of action against a single defendant, is far different from the case at bar. For instance, while it may be true that cable companies are "national" in that they do business in multiple states, an individual suit against an individual defendant, as in this case, does not present the problem of competing state statutes of limitations as contemplated by the *Malley–Duff* Court. *See* 483 U.S. at 154, 107 S.Ct. 2759. Rather, the targeted piracy alleged in the Complaint is alleged to have taken place in a single location by a single defendant in a single state.

A suit by a California Plaintiff against a Georgia Defendant is not unusual or rare in federal court and does not present any special circumstance that would undermine the implementation of the FCA or prevent a plaintiff from pursuing a claim under the FCA. The Supreme Court has relied on the practical difficulties of litigation to apply a federal statute of limitations in the limited circumstance where a plaintiff is effectively prohibited from enforcing rights guaranteed under federal law. *See Malley–Duff*, 483 U.S. at 153–54, 107 S.Ct. 2759 (applying federal limitations period where multiple state statutes of limitations could govern a single claim); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 166, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (applying federal limitations period where ninety-day state limitations period would fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights).

This Court declines to apply the exception simply for the purpose of streamlining a plaintiff's litigation efforts across the country. While it may seem attractive for federal courts to seek out an analogous federal law and apply it uniformly, that would be in derogation of binding Supreme Court precedent. *North Star Steel*, 515 U.S. at 34, 115 S.Ct. 1927. Moreover, the fact that the limitations period will vary from state to state is not sufficient reason to apply the exception. If that were the case, then the exception would inevitably swallow the rule. "[T]he practice of adopting state statutes of limitations for federal causes of action can result in different limitations periods in different States for the same federal cause of action, and [ ] some plaintiffs will canvass the variations and shop around for a forum. But these are just the costs of the rule itself." *Id.* at 36, 115 S.Ct. 1927.

Therefore, the Court sees no reason to examine federal law for an analogy because state law provides an analogous cause of action. Under Georgia law, O.C.G.A. § 46–5–2, the statute of limitations for a cause of action under 47 U.S.C. § 605 is four years. Plaintiff filed its cause of action within this time period. Accordingly, as to Counts I and II, Defendant's Motion to Dismiss is hereby **DENIED.**

### III. Count III

■ Plaintiff's Count III asserts a claim for unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1). Defendant contends that the statute of limitations commenced when Plaintiff seized records from EQ Stuff, Inc. on January 24, 2002. Since the Complaint in this case was not filed until January 28, 2004, Defendant argues that Plaintiff's Complaint was filed out of the statute of limitations and should be dismissed. Plaintiff responds that the Court should find that the statute of limitations did not begin to run until January 28, 2004, because that is the date on which Plaintiffs received the bates stamped, numbered copies of the documents that were seized on January 24, 2002. Plaintiff does not dispute the legal standard for when the statute of limitations begins, but argues that because of the complex nature of the evidence and the large amount of records that it received from the seizure on January 24, 2004, the statute of limitations should not begin until the records seized had been through some initial processing.

The statute of limitations for the Wiretap Act is found in 18 U.S.C. § 2520(e) and provides that "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). "Like many statutes of limitation, [ § 2520(e) ] does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it." *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir.1998); *see Andes v. Knox*, 905 F.2d 188, 189 (8th Cir.1990) ("[T]he cause of action accrues when the claimant has a reasonable opportunity to discover the violation, not when she discovers the true identity of the violator or all of the violators.")

The courts that have considered the question of when the statute of limitations should begin on these facts have relied on different dates to start the statute of limitations. In *DirecTV v. Thomas*, 329 F.Supp.2d 949 (E.D.Mich.2004), the defendant moved to dismiss the plaintiff's complaint on statute of limitations grounds. There, the plaintiff raided a shipping facility used by a manufacturer of illegal piracy equipment on May 25, 2001 and recovered business and financial records. The plaintiff did not receive records that disclosed the defendant's name until September 14, 2001, when the operator of the seized company turned over additional business records. *Id.* at 951. The *Thomas* court held that the statute of limitations began to run on September 14, 2001 when the plaintiff received records which implicated the defendant. *See also DirecTV v. Johnson*, No. 03 C 8504, 2004 WL 2011392, at *3 (N.D.Ill. Sept.3, 2004) (holding that statute of limitations began to run when the plaintiff received records which implicated the defendant).

By contrast, in another case involving the same series of seizures and records, the court held that the plaintiff had a reasonable opportunity to discover the alleged violations on the date on which the writs of seizure were executed, May 25, 2001, which then led to the subsequent turnover of the records. *DirecTV v. Brady*, No. A. 03–1450, 2004 WL 1752853, at *7 (E.D.La. Aug. 4, 2004). That court stated that the date the records were turned over was irrelevant because the significant date was that the defendant had purchased a device from the manufacturer and the date of the raid which led to the discovery of the defendant's alleged violation was May 25, 2001. *Id.* at *7.

Under the facts of this case, however, the decisions in *Thomas* and *Brady* are in accord. Here, it is undisputed that the seizure of records which led to the discovery of Defendant took place on January 24, 2002. Plaintiff is not arguing that there was any intervening raid, seizure or turnover of documents or business records or that the seizure on January 24, 2002, did not provide records that implicated Defendant. Plaintiff argues merely that after the seizure of the records on January 24, 2002, the Court should toll the start of the statute of limitations to permit Plaintiffs time to organize the seized records, make copies and number them with bates stamps.

Plaintiff has cited no authority, and the Court has found none, that would provide for the tolling of the statute of limitations under § 2520(e) to permit Plaintiff time to organize, copy and bates stamp the documents it received. Section 2520(e) commences the statute of limitations when a "claimant first has a *reasonable opportunity* to discover the violation." Plaintiff first had such an opportunity when it executed the writ of seizure on EQ Stuff on January 24, 2002. Notably, Plaintiff argues that it acted diligently in preparing the documents and had received them back by January 28, 2004, four days after the seizure. Therefore, it appears that Plaintiff had the remainder of the following two years to discover Defendant's identity and bring suit against him. Neither the complex nature of the evidence, the volume of the records, nor the "realities of the real world" provide Plaintiffs additional time where the plain language of the statute specifies otherwise. Where the records seized provide the plaintiff with a reasonable opportunity to discover the violation, the mere fact that the plaintiff did not avail itself of that opportunity in a timely fashion will not toll the statute of limitations. Since Plaintiff did not file suit until January 28, 2004 and the statute of limitations on Plaintiff's claim under 47 U.S.C. § 2511 ran on January 24, 2004, the Court finds that Plaintiff's claim is time-barred. Accordingly, Count III of Plaintiff's Complaint is hereby DISMISSED.

### Conclusion

Defendant's Motion to Dismiss [8–1] is **GRANTED in part and DENIED in part**. Defendant's Motion is **GRANTED** as to Counts III and IV. Counts III and IV are hereby **DISMISSED**. Defendant's Motion is **DENIED** as to Counts I and II. It appears the Court that discovery in this case closed on November 27, 2004. Therefore, the Parties are **DIRECTED** to file dispositive motions or a consolidated pretrial order within twenty (20) days of the date of entry of this Order.